**Clair G. Burrill, Esq. - SBN 63930**
**Clair G. Burrill, P.C.**
**501 S. Reino Road, Suite 300**
**Thousand Oaks, CA 91320**
**Phone: (805) 375-1144**
**Fax: (805) 375-1146**
**E-mail: ClairBurrill@gmail.com**

**JD Sanchez, Esq. - SBN 246598**
**JD Sanchez, Attorney at Law**
**4101 McGowen Street, Suite 110-234**
**Long Beach, CA 90808**
**Phone: (949) 929-8730**
**Fax: (888) 875-8525**
**E-mail: jdsanchez.esq@gmail.com**

**Attorneys for Plaintiffs**
**Steve Cooper, Jon Sandler, and**
**Greylyn Johnson**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **STEVE COOPER, JON SANDLER, SANDLER, and GREYLYN JOHNSON** | **Case No.** |
| **Plaintiffs,** | **COMPLAINT FOR:** |
| **vs.** | **1. COPYRIGHT INFRINGEMENT** |
| **HYBE CO., LTD., HYBE AMERICA INC., HYBE MUSIC SERVICES, LLC, BIG HIT MUSIC, ARTIST PUBLISHING GROUP, LLC, DERRICK GRAY aka DERRICK MILANO, JAMES ESSIEN, JAMISON BAKEN aka LE CLAIR, RYAN TEDDER, TYLER SPRY, SEAN FOREMAN, KIRSTEN SPENCER** | **2. AN ACCOUNTING** |
| **and DOES 1 through 50** | |
| **Defendants.** | |

Plaintiffs, STEVE COOPER, JON SANDLER, and GREYLYN JOHNSON ("Plaintiffs"), allege as follows:

1

## JURISDICTION AND VENUE

1. The jurisdiction of this court is invoked pursuant to the provisions of 28 U.S.C. §§ 1331, 1338(a)-(b), 1367(a) in that the controversy arises under the Copyright Act of 1976, 17 U.S.C. §101, et seq.

2. Venue is proper in this district under 28 U.S.C. §1391 and §1400(a) in that Defendants conduct business in this district and the claims alleged herein arose in this district.

## THE PARTIES

3. Plaintiffs are, and at all times material have been, individuals residing in Los Angeles County, California.

4. Defendant, **HYBE CO., LTD.** ("Hybe Co.") is, and at all times material was, a Korean corporation with a principal place of business located at 42, Hangang-Daero, Yongsan-gu, Seoul, 04389. Hybe Co. has been and continues to be registered with the California Secretary of State and maintains a registered agent for service of process in California. Hybe Co. maintains an office in this judicial district.

5. Defendant, **HYBE AMERICA INC**. ("Hybe America") is, and at all times material was, a California corporation with a principal place of business located at 2100 Colorado Avenue, Santa Monica, CA 90404.

6. Defendant, **HYBE MUSIC SERVICES, LLC** ("Hybe Services") is, and at all times material was, a Delaware limited liability company with a principal place of business located at 2100 Colorado Avenue, Santa Monica, CA 90404.

7. Upon information and belief, defendant, **BIG HIT MUSIC** ("Big Hit") is, and at all times material was a subsidiary of Hybe Co. and maintains an office in this judicial district.

8. Defendant, **ARTIST PUBLISHING GROUP, LLC** ("APG") is, and at all times material was, a Delaware limited liability company, registered with the California Secretary of State and maintaining a registered agent for service of process in California. APG maintains an office in this judicial district.

9. Defendant, **DERRICK GRAY aka DERRICK MILANO** ("Milano"), is, and at all times material was, an individual with a place of residence, and/or engaged in song writing employment, in this judicial district.

10. Defendant, **JAMES ESSIEN**, is, and at all times material was, an individual with a place of residence, and/or engaged in song writing employment, in this judicial district.

11. Defendant, **JAMISON BAKEN aka LECLAIR** ("Baken") is, and at all times material was, an individual with a place of residence, and/or engaged in song writing employment, in this judicial district.

12. Defendant, **RYAN TEDDER** ("Tedder") is, and at all times material was, an individual with a place of residence, and/or engaged in song writing employment, in this judicial district.

13. Defendant, **TYLER SPRY** ("Spry") is, and at all times material was, an individual with a place of residence, and/or engaged in song writing employment, in this judicial district.

14. Defendant, **SEAN FOREMAN** ("Foreman") is, and at all times material was, an individual with a place of residence, and/or engaged in song writing employment, in this judicial district.

15. Defendant, **KIRSTEN SPENCER** ("Spencer") is, and at all times material was, an individual with a place of residence, and/or engaged in song writing employment, in this judicial district.

16. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as Does 1 through 50 and therefore sue these defendants by such fictitious names.

17. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. In doing the acts or committing the omissions described herein, each of the defendants acted in concert with each of the other defendants with the express intention of depriving Plaintiffs of the benefits to which Plaintiffs were and are entitled as described herein and/or with the knowledge of Plaintiffs' rights, and/or acted as agent for each of the other defendants within the course and scope of such agency, such that each defendant is

legally responsible for Plaintiffs' damages resulting from the acts or omissions of each of the other defendants as described herein, and all defendants are jointly and severally referred to as "Defendants" herein, except where otherwise specified.

## **FACTS**

18. In early 2025, Plaintiffs, all three accomplished songwriters and musicians, began writing and composing a musical composition comprised of lyrics and music, by exchanging ideas, music cues, information, and other data. In doing so, Plaintiffs meticulously selected and arranged their melodies, lyrics, harmonies, rhythms, and other elements to create a distinctly new, protectable musical composition.

19. In March, 2025, Plaintiffs completed their musical composition and embodied it on a demonstration recording (the "Demo"). They entitled both their musical composition and the Demo "SWIM." The Plaintiffs' musical composition "SWIM" embodied on the Demo is herein referred to as the "Original Work."

20. Also in March, 2025, Plaintiffs began sending out copies of the Original Work to various parties for them to consider using and exploiting the Original Work for mutual financial gain. Included among those parties, without limitation, were defendant APG, in Los Angeles, in the persons of Michael Caren and Roxy Silver; and Noreen Prunier-Winans, a manager of songwriters and music producers and the head of the artists and repertoire and publishing departments at ATG Group also in Los Angeles.

21. Upon information and belief, Michael Caren and Roxy Silver listened to the Original Work and shared it with others, including specifically and without limitation, defendant Milano, one of the principal songwriters under contract to APG. Evidence of Caren's and Silver's listening to the Demo is set out in the Disco Stats report received by Plaintiffs from Disco.ac, a true copy of which is attached hereto, marked Exhibit A, and made a part hereof.

22. Upon information and belief, Noreen Prunier-Winans listened to the Original Work and shared it with others, including various songwriters and music producers.

23. Upon information and belief, Defendants, Hybe Co., Hybe America, Hybe

Services, and Big Hit, have written agreements with the musical recording and performing group of seven Korean male individuals known as "BTS aka Bangton Boys" ("BTS"), pursuant to which those companies represent and exploit BTS' musical performing, recording, song writing, and music publishing interests and careers.

24. Upon information and belief, in or about June, 2025, BTS was in Los Angeles and began working on a new sound recording album embodying their performances of various musical compositions.

25. Upon information and belief, in or about August, 2025, BTS, looking for material for their new album, met and worked with various songwriters, music producers, and others in conjunction with the selection of the materials to be included in the production of their new album, including the musical compositions to be recorded on the album.

26. According to the Netflix documentary *BTS: The Return*, one of the musical compositions being worked on and to be included on the album was entitled "SWIM."

27. Upon information and belief, among the various parties, including without limitation, songwriters and music producers that were meeting and otherwise collaborating with BTS at various times with regard to the album and specifically a musical composition entitled "SWIM," were principals and representatives of defendants Hybe Co., Hybe America, Hybe Services, and Big Hit, and defendant songwriters Milano, Baken, Essien, Tedder, Spry, Foreman, and Spencer.

28. Upon information and belief, in early 2026, the new BTS album, entitled "Arirang," embodying a sound recording of a musical composition entitled "SWIM," was completed and released for sale to the public in March, 2026.

29. Upon listening several times to the musical composition entitled "SWIM" embodied on the BTS Arirang album, Plaintiffs came to what they considered to be the obvious and inescapable conclusion that the BTS musical composition entitled "SWIM" copied in very large part the Original Work and clearly infringed their copyrights in and to the Original Work.

30. Thereupon, in early April, 2026, Plaintiffs engaged the services of musicologist,

Alexander Stewart, Ph.D., to perform a musicological analysis and comparison of the BTS musical composition entitled "SWIM" to the Original Work to ascertain if, in his expert opinion, there was evidence of substantial similarities.

31. In a verbal preliminary report, Professor Stewart opined that there clearly was evidence of substantial similarities. The BTS musical composition entitled "SWIM" is herein referred to as the "Infringing Work."

32. Upon receiving Professor Stewart's verbal preliminary report, Plaintiffs engaged the services of legal counsel to apply for registration of their copyrights in and to the Original Work and to pursue claims of copyright infringement. Legal counsel applied for the copyright registration and a true copy of Plaintiffs' Certificate of Registration of copyright in and to their musical composition entitled "SWIM", copyright registration number, PAu 4-308-121, is attached hereto, marked Exhibit B, and made a part hereof.

33. Following are relevant quoted portions of a preliminary written report prepared by Professor Stewart setting forth references to the numerous substantial similarities in the Infringing Work and his expert opinion relating thereto. In his report, Professor Stewart refers to the Original Work as "SJG" and to the Infringing Work as "BTS".

34. Professor Stewart states: "My research, investigation and analysis have determined that the versions of these songs titled 'Swim' contain significant similarities and that these elements in BTS were unequivocally taken from SJG. These similarities encompass the signature phrase (or 'hook') referencing the title, unusual harmonies, textures, and rhythmic and lyrical elements. A prior art search has revealed no other songs containing this expression and no songs as similar to these songs as they are to each other. These elements are unique in the aggregate as well distinctive individually. In my expert opinion, independent creation of BTS can be ruled out and copying is the inescapable conclusion."

35. Continuing: "One fundamental similarity between these two songs is the ambiguity of their tonal centers. Both never firmly establish their possible major or relative minor keys. This tonal ambiguity is a salient feature of both works and is a fitting musical

framework for the aqueous setting – a narrative theme of swimming and associated sensations. Both songs are built almost exclusively on just two chords neither of which is the tonic or home key. Relative major and minor keys share the same key signature (sharps and flats) but contain different tonics, or "key notes." The tonic is usually the most stable pitch in the composition and is a point of harmonic and melodic resolution.

36. Next, Professor Stewart provides examples to support his findings and expert opinion. In Example 1 below, Professor Stewart compares the hook in the Original Work "SJG" to the hook in the Infringing Work "BTS". He writes: "While other similarities are found in the verses of both Swims, the most important melodic similarities in these works are found in the choruses. As discussed further below, this content is central to the 'hooks,' or most valuable expression in both songs. Example 1 below provides the hook from the choruses of SJG and the climactic third chorus of BTS. This melodic material appears again in the fourth chorus (Outro) of BTS at approximately 2:27. Following standard musicological procedure both songs have been placed in the same key signature and SJG has been transposed to A major/F# minor. Transposition does nothing to change the internal relationships in a musical work. All the following comparisons are based on this transposition."



37. "As can be seen in the example above, in both songs, a phrase about watching the swimmer leads into the word 'swim' which then is echoed (in parentheses) on each beat.

The words 'watch' and 'watching' are set to the same pitches, A and B. The 'swim' lyrics are followed by a consequent phrase on a repeated A (SJG: 'wishin' you could get back in'; BTS 'This is how it all begins') that is very similar melodically and rhythmically in both songs.

38. "As illustrated in the example below, the consequent phrase following the echoing 'swim' phrase is very similar in the choruses of both songs: a rapid-fire sixteenth-note melody on the static pitch A followed by a rise up to C# and back to A and B. This rhythmic motive reappears in BTS' important catch phrase 'I just wanna dive.'" Here are the examples.



39. "The 'Wishin' you could get back in' phrase is heard three times and the 'I don't wanna drown' phrase is heard five times in SJG. In BTS, the 'Water falling off your skin' phrase is heard four times and 'This is how it all begins' is heard three times with a slight variation in the fourth iteration: 'Let it all begin.' Note also the similar rhyme schemes: 'in/skin' and "again/begins.'"

40. "My analysis now turns to another salient compositional element in both songs – the underlying ostinatos or arpeggio-like figurations. This compositional layer, providing the musical foundation of both Swims, expresses not only on the unusual harmonies and their lack of tonal center, but provides an essential texture that occurs continuously throughout most of both compositions.

Example 8   Synth Patterns



These swirling figurations, while providing the harmonic support for the melodies, are central in setting the aquatic, floating mood. Example 8 above compares the two ostinatos. While it can be seen that the contours are somewhat different (SJG has a wider sweep or

range ascending and descending), both contain mostly the same pitches (highlighted in red), though BTS occasionally includes one non-chord-tone (B or the sixth on the D major and F# or the fourth on the C# minor). These same non-chord tones are also present in SJG in the vocals. Both ostinato-like figurations are based on the same rhythmic units (eighth notes). Greater syncopation is heard in SJG, but nearly all the notes are of the same duration. They are also set to similar 'plucking' synthesizer sounds. Example 10 below gives the lead vocal melodies and the ostinatos as they are heard in combination in the choruses of SJG and in the climatic final chorus of BTS."

41. The distinctive harmonic context supporting the melodies, lyrics, and rhythmic motives of these songs is expressed in these ostinato-like figurations. If the songs are analyzed in terms of the relative major key, the chords are IV and iii using standard Roman numeral terminology where uppercase numerals represent major chords and lowercase minor chords and the number represents the chord root in relation to the scale degree. If they are analyzed in a minor tonality, the chords are VI and v. Songs constructed almost entirely from these two chords without a tonic are a rarity in the vast corpus of popular music.

42 Regarding the lyrics of the two songs, Professor Stewart writes: "While a detailed comparison of the lyrics of these songs is beyond the scope of this preliminary report, both songs share a theme of watching a person swimming. The perspectives differ only in the sense that in SJG the singer is the woman swimming and she invites her former lover to observe how she navigates her new-found freedom. In BTS the perspective is reversed and the male singers seem eager to dive into a romantic relationship with the woman they are watching swim."

43. He adds: "Experimenting with a change in point of view is a standard technique in song writing. The musical setting described above, the ambiguous tonality and lack of a clear tonal mooring, the two oscillating chords, and the churning, floating quality of the ostinatos provide a compelling musical sound scape for these aquatic narratives."

44. Professor Stewart concludes: "Based on my extensive experience in popular music and my prior art search, I can state with confidence that BTS Swim' was not created independently from the SJG 'Swim' and BTS 'Swim' would not exist in anything like its present form without the pervasive influence of SJG 'Swim.' The expression derived from SJG contributes the most valuable and memorable musical and lyrical content of BTS. The songs share virtually identical or similar melodies, rhythms, unusual harmonies, textures, prosody and other details. As a preliminary inquiry, this report is not intended to be exhaustive and I retain the right to amend or supplement it should further information become available. Moreover, the music excerpts cited in this report are only illustrative of the fundamental similarities found between these two songs and do not catalogue every instance of their iterations."

45. Before filing this lawsuit, Plaintiffs, by U.S. Mail and email transmission, contacted all of the parties considered to be involved in the infringements, including specifically Defendants, in an attempt to resolve this dispute. Defendants either did not respond or were unable to reach a resolution with Plaintiffs, necessitating the filing of this action.

//

## FIRST CLAIM FOR RELIEF

(For Copyright Infringement Against All Defendants)

46. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

47. Plaintiffs jointly authored and own the copyrights in and to the Original Work, which is registered with the U.S. Copyright Office.

48. Upon information and belief, Defendants, and each of them, had access to the Original Work as shown herein through a chain of events connecting Plaintiffs' distribution of the Original Work to various parties, including defendant APG, which, at all times material, represented and represents songwriter, defendant Milano; and Noreen Prunier-Winans, who, at all times material, managed, and represented and manages and represents various songwriters and music producers.

49. In distributing the Original Work to the various parties as aforesaid, Plaintiffs presented them with the opportunity to listen to and copy the Original Work, which, upon information and belief, they did.

50. Furthermore,  Defendants, and each of them, had access to the Original Work in that, as shown in Professor Stewart's preliminary report and herein, the asserted similarities between the Original Work and the Infringing Work, are so strikingly similar that it is a certainty the works were not and could not have been created independent of one another.

51. Upon information and belief, Defendants, and each of them, without authorization from Plaintiffs and in violation of Plaintiffs' rights, reproduced, distributed, created derivative works of, and publicly performed the Original Work, or authorized or licensed some or all of the foregoing to others. They did so by creating, offering for sale and download, selling, reproducing, distributing, creating derivative works of, and publicly performing the Infringing Work, or authorizing or licensing some or all of the foregoing to others, all without authorization from and compensation to Plaintiffs.

52. Due to the acts of copyright infringement by Defendants, and each of them, Plaintiffs have suffered damages in an amount to be established at trial.

53. Due to the acts of copyright infringement by Defendants, and each of them, Defendants have obtained profits they would not have realized but for their infringements. Accordingly, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringements in an amount to be established at trial.

54. Defendants, and each of therm, have intentionally copied and used the Original Work and continue to profit from such copying and using but have failed and still refuse to pay Plaintiffs any compensation therefor, all in violation of 17 U.S.C. §501.

55. As a result the acts of copyright infringement by Defendants, and each of them, Plaintiffs are entitled, pursuant to the provisions of 17 U.S.C §502, to temporary, preliminary, and permanent injunctive relief in order to prevent and restrain further ongoing acts of copyright infringement by Defendants, and each of them, and to the damages suffered by Plaintiffs as a result thereof.

56. Plaintiffs are also entitled, pursuant to 17 U.S.C §503, to an order authorizing seizure, impounding, and/or destruction of all copies of the Infringing Work which have been made and/or sold in violation of Plaintiffs' rights, together with all machines, implements, or other means by which such copies may be produced.

57. Plaintiffs have suffered and will continue to suffer monetary damages in an amount according to proof and are entitled to recover such damages, including actual damages and the profits of Defendants, and each of them, attributable to the infringements, pursuant to the provisions of 17 U.S.C. §504.

58. Plaintiffs have been forced to incur, will continue to incur, and are entitled to recover their costs, in an amount according to proof at the time of trial.

## SECOND CLAIM FOR RELIEF

(For An Accounting Against All Defendants)

59. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

60. In the alternative, Plaintiffs allege that they are co-writers, co-composers, co-creators, and co-copyright proprietors of nearly all of the quantity and quality of the

13

Infringing Work and that, as such, Plaintiffs are entitled to be credited as co-creators and to nearly all of the ownership of and copyrights in and to the Infringing Work and nearly all of the past, present, and future profits, monies, and other consideration generated from the exploitation of the Infringing Work.

61. Plaintiffs, collectively, and Defendants, collectively, jointly contributed material to the Infringing Work, with Plaintiffs contribution being nearly all of the material, and Plaintiffs, collectively, and Defendants, collectively, possess independent creative control over their respective contributions to, ownership of, and copyrights in and to the Infringing Work.

62. Plaintiffs, collectively, and Defendants, collectively, can be considered as manifesting an intent to be co-writers, co-composers, co-creators, and co-copyright proprietors of the Infringing Work, with Plaintiffs contribution to the creation being nearly all of the contribution.

63. Plaintiffs, as co-writers, co-composers, co-creators, and co-copyright proprietors of nearly all of the Infringing Work are entitled to be credited as co-creators and to nearly all of past, present, and future profits, monies, and other consideration gained from all past, present, and future exploitation of the Infringing Work.

64. By commercially exploiting the Infringing Work without causing Plaintiffs to be credited as co-creators and without accounting to Plaintiffs for nearly all of the profits, monies, and other consideration, Defendants, and each of them, have wrongfully deprived Plaintiffs of their right to be credited as co-creators and their rightful share of nearly all income and consideration derived therefrom.

65. Defendants are in sole control of the books and records needed to ascertain the amounts due to Plaintiffs pursuant to their rightful share of nearly all income and consideration derived from the commercial exploitation of the Infringing Work as co-writers, co-composers, co-creators, and co-copyright proprietors of the Infringing Work. Plaintiffs have no means by which they can acquire the information necessary to calculate what is owed to them by Defendants, and each of them.

66. Plaintiffs are entitled to an Order of this Court directing Defendants, and each of them, to render a complete, detailed, and honest accounting of all revenues and other consideration derived from the exploitation of the Infringing Work and all sums due to Plaintiffs, and to pay Plaintiffs the sums shown due by such accounting.

67. Joint copyright owners have a fiduciary duty to account for and pay to their co-owners their portions of all profits, monies, and other consideration realized in connection with the jointly owned copyrights; yet Defendants, and each of them, have failed to account or make payments as required.

### **Prayer For Relief**

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, as follows:

1. An injunction permanently restraining and enjoining Defendants, and each of them, and anyone working for, with, or in concert with Defendants, from further infringing Plaintiffs' copyrights in and to the Original Work, or alternatively that Plaintiffs be awarded a percentage equal to nearly all of the ownership of and copyrights in and to the Infringing Work, the exact percentage to be proven at the time of trial, and all past, present, and future profits, monies, and other consideration earned in connection with the exploitation and continued exploitation of the Infringing Work in an amount attributable to nearly all thereof, the exact sum to be proven at the time of trial;

2. Awarding all of Plaintiffs' losses and damages directly and indirectly attributable to the acts of copyright infringement by Defendants, and each of them, plus all the profits of Defendants, and each of them, derived from the acts of copyright infringement by Defendants, and each of them, of Plaintiffs' copyrights in and to the Original Work, the exact sums to be proven at the time of trial;

3. Awarding Plaintiffs pre-judgment and post-judgment interest as allowed by law;

4. Awarding Plaintiffs all of the costs incurred in this action; and

5. For such other relief as the court may deem just and proper.

//

Dated: July 8, 2026

Respectfully submitted,

Clair G. Burrill, Esq.

JD Sanchez, Esq.
Attorneys for Plaintiffs, Steve Cooper,
Jon Sandler, and Greylyn Johnson

16